```
IN THE UNITED STATES DISTRICT COURT
  FOR THE WESTERN DISTRICT OF TENNESSEE
            WESTERN DIVISION
```

|  |  |  |
|---|---|---|
| D.B., a minor, by and through his next friend and mother, ANTOINETTE LUNDY, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:17-cv-2806 |
| SHELBY COUNTY HEALTH CARE CORPORATION and UNITED STATES OF AMERICA, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER**

Before the Court is Defendant United States of America's (the "Government") October 30, 2018 Motion to Dismiss. (ECF No. 58.) Plaintiff Antoinette Lundy, mother and next friend of her minor child D.B., responded on November 8, 2018. (ECF No. 59.) The Government replied on November 23, 2018. (ECF No. 60.)

For the following reasons, the Government's Motion is DENIED.

**I.    Background**

This is a tort action arising from injuries sustained by Lundy's minor child, D.B., because of allegedly negligent conduct during his delivery on May 2, 2014. (ECF No. 38 at 447-48.)[1]

---

[1] Unless otherwise noted, all pin cites for record citations are to the "PageID" page number.

On April 28, 2017, Lundy, pursuant to Tennessee law, notified health care providers responsible for her and D.B.'s care that she intended to sue them. (ECF No. 4-1 at 183-84.) Christ Community Health Services, Inc. ("CCHS") and its employees Dr. William G. Mullinax, Dr. Ellisa Rausch Krumm, and Dr. David Jordan Paslay (the "doctors") were among the parties notified. (Id.) On or before May 19, 2017, the United States Department of Health and Human Services ("HHS") sent a letter to Lundy. (ECF No. 16-2 at 381.) HHS informed Lundy that it had learned of her intent to sue CCHS employees, that those employees might have been federal employees at the time they provided care, and that, if so, the Federal Tort Claims Act ("FTCA") would be her exclusive remedy. (Id.)

On August 22, 2017, Lundy sued CCHS, the doctors, and Shelby County Health Care Corporation in Tennessee state court. (ECF No. 4-1 at 176.) Lundy served CCHS through its registered agent on September 1, 2017. (ECF No. 4 at 173.) CCHS notified the Government of Lundy's lawsuit on September 20, 2017. (Id. at 172.) The Government filed a response on September 27, 2017. (ECF No. 4-1 at 327-28.) In its response, the Government said it had not yet determined whether CCHS and the doctors were federal employees when they cared for Lundy and D.B. and, as a result, did not yet know if federal law would require the Government to enter a

substitution of party. (Id.) On October 13, 2017, while her case was pending in state court, Lundy filed an FTCA administrative claim against the Government. (ECF No. 20 at 393.)

CCHS removed to this Court on November 3, 2017, under 42 U.S.C. § 233(l)(2). (ECF No. 4.) On December 6, 2017, after determining that CCHS and the doctors were federal employees at all relevant times, the Government moved to substitute itself as a defendant in place of CCHS and the doctors. (ECF No. 12 at 361.) The Court granted the Government's motion on December 11, 2017. (ECF No. 15.) The next day the Government filed a motion to dismiss for lack of jurisdiction, noting that Lundy had failed to exhaust her administrative remedies as required by the FTCA. (ECF No. 16 at 370.) The Court granted the Government's motion on February 16, 2018, dismissing the case against the Government without prejudice. (ECF No. 29.)

On June 28, 2018, Lundy filed a motion for leave to amend her Complaint to add the Government as a defendant. (ECF No. 35.) She represented that she had completed the FTCA administrative claims process and received a final determination denying her claim. (Id. at 427.) The Court granted Lundy's motion. (ECF No. 36.) Lundy filed her Amended Complaint on July 19, 2018, naming the Government and Shelby County Health Care Corporation as defendants. (ECF No. 38.)

3

On October 30, 2018, the Government filed the instant Motion to Dismiss. (ECF No. 58.) The Government contends that Tennessee's health care liability statute of repose deprives the Court of jurisdiction over the Government. (Id. at 696.)

**II. Standard of Review**

Although the Government does not cite a federal rule of civil procedure as a basis for its Motion to Dismiss, the Court construes the Motion as made under Rule 12(b)(1).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be premised on a facial or factual attack. See Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007). A facial attack questions the sufficiency of the pleading. Id. A factual attack questions the actual existence of subject matter jurisdiction. See Eiswert v. United States, 322 F. Supp. 3d 864, 869 (E.D. Tenn. 2018). Where, as here, the motion to dismiss is a factual attack, the Court is "free to consider extrinsic evidence and may weigh the evidence of its own jurisdiction." Id. at 870.

**III. Analysis**

Tennessee's health care liability statute of repose provides that "[i]n no event shall any [health care liability] action be brought more than three (3) years after the date on which the negligent act or omission occurred . . . ." Tenn. Code. Ann. § 29-

4

26-116(a)(3). Lundy had until May 2, 2017 to bring her claim. That deadline was extended one-hundred-and-twenty days, to August 30, 2017, when Lundy notified CCHS and the doctors that she intended to sue them. See Tenn. Code. Ann. § 29-26-121(c). The Government contends that, because Lundy filed her Amended Complaint after the deadline, the statute of repose bars her claim against it. (ECF No. 58 at 698.)

The statute of repose applies to Lundy's claim against the Government. In FTCA actions, the substantive law "of the place where the [negligent] act or omission occurred" determines the Government's liability. 28 U.S.C. § 1346(b)(1); see also Premo v. United States, 599 F.3d 540, 545 (6th Cir. 2010). The alleged negligence at issue occurred in Tennessee. Tennessee substantive law applies. The statute of repose is substantive law. See Huddleston v. United States, 485 F. App'x 744, 745-46 (6th Cir. 2012) ("The statute of repose is a substantive requirement, not just a procedural hurdle.").

Lundy does not dispute that the statute of repose had run when she filed her Amended Complaint. Lundy contends, however, that the statute of repose does not bar her claim against the Government for two independent reasons: (1) Tennessee's savings statute makes her Amended Complaint timely; and (2) her Amended Complaint relates back to her initial Complaint, which was filed

5

within the statute of repose. (ECF No. 59 at 707, 716.) Lundy's first argument is correct. The Court need not reach the second.

Under Tennessee's savings statute, if an "action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action," the plaintiff may "commence a new action within one (1) year after" the initial action ends. Tenn. Code. Ann. § 28-1-105(a). Like the statute of repose, the savings statute is substantive law and applies to Lundy's FTCA claim. See Advey v. Celotex Corp., 962 F.2d 1177, 1181 (6th Cir. 1992) (treating the savings statute as substantive law in a diversity case). It also applies to health care liability actions that the statute of repose would otherwise bar. See Cronin v. Howe, 906 S.W.2d 910, 915 (Tenn. 1995).

Lundy satisfies the savings statute's textual requirements. First, Lundy's initial Complaint was an "action . . . commenced within" the statute of repose. Filing a lawsuit is an "action." In the title where the savings statute is found, an "[a]ction . . . includes motions, garnishments, petitions, and other legal proceedings in judicial tribunals for the redress of civil injuries." Tenn. Code. Ann. § 28-1-101 (internal quotation marks omitted). Lundy filed her initial Complaint before the statute of repose deadline.

6

Second, the Court's February 16, 2018 order dismissing the case against the Government was a "judgment or decree . . . rendered against [Lundy] upon [a] ground not concluding [her] right of action." This language from the statute includes any dismissal other than one on the merits. See Circle C Constr., LLC v. Nilsen, 484 S.W.3d 914, 919 (Tenn. 2016). It includes a dismissal for lack of jurisdiction. See Freeman v. Marco Transp. Co., 27 S.W.3d 909, 913 (Tenn. 2000) ("The savings statute . . . appl[ies] to a timely filed case that was dismissed for lack of jurisdiction and then refiled . . . within one year of the dismissal.").

Third, Lundy's June 28, 2018 motion to amend her Complaint was a "new action" taken within a year of the Court's February 16, 2018 order of dismissal. See Advey, 962 F.2d at 1182 ("Sparks's motion to amend [the complaint] was an action for the resuscitative purpose of the savings statute."); Frazier v. East Tenn. Baptist Hosp., Inc., 55 S.W.3d 925, 929 (Tenn. 2001) ("[T]he filing of a motion to amend along with a proposed amended complaint constitutes commencement of a new action within the purview of the savings statute.").

There is, however, an additional requirement not found in the text of the savings statute: the statute applies only "when the original complaint and the new complaint allege substantially the same cause of action, which includes identity of the parties."

7

Scott v. Mem'l Health Care Sys., Inc., 660 F. App'x 366, 371 (6th Cir. 2016) (quoting Foster v. St. Joseph Hosp., 158 S.W.3d 418, 422 (Tenn. Ct. App. 2004)); see also Turner v. Aldor Co. of Nashville, Inc., 827 S.W.2d 318, 321 (Tenn. Ct. App. 1991) (savings statute did not apply to a second complaint that added as a defendant an impleaded party from the initial action). Lundy's two complaints do not name the same parties. The original Complaint names CCHS and the doctors as defendants. The Amended Complaint names the Government. The party identity requirement, however, is not inflexible.

Three Tennessee decisions have concluded that the savings statute preserved a new or amended complaint, filed after the relevant limitations period had run, that named a party not named in the initial complaint. See Goss v. Hutchins, 751 S.W.2d 821, 824-25 (Tenn. 1988); Foster, 158 S.W.3d at 424-25; Sowell v. Estate of Davis, No. W2009-00571-COA-r3-CV, 2009 WL 4929402, at *4 (Tenn. Ct. App. Dec. 21, 2009).

In Goss, the plaintiff was injured when the car in which she was a passenger collided with another car. 751 S.W.2d at 822. The driver of the other car died in the crash. Id. The plaintiff filed a complaint, naming the driver's estate as defendant. Id. The plaintiff voluntarily non-suited that case, and then, within a year of the non-suit, filed a second complaint that again named

8

the estate as defendant. Id. at 823. The estate moved to dismiss the second case "as improperly brought against an estate rather than its representative." Id. (internal quotation marks omitted). The trial court allowed the plaintiff to amend her second complaint to name the estate's representative as defendant. Id. A trial was held. Id. The plaintiff won. Id. On appeal, the Tennessee Court of Appeals found that, because the plaintiff filed her second complaint after the statute of limitations had run, her claim was barred. Id. The Court of Appeals held that the savings statute did not apply to the second complaint because the representative was not a party to the first case. Id.

The Tennessee Supreme Court reversed. The court noted that, in the first case, "a suit against the [estate's] representative was intended," the summons identified the representative and directed service on his attorney, and the representative filed an answer to the plaintiff's initial complaint. Id. at 825. The representative, "having actual notice of plaintiff's summons and complaint, . . . knew that plaintiff's action against the Estate was intended as a suit against [him] in his capacity as executor of the estate" and "clearly was not prejudiced by the omission of [his name] in the [first case's] caption." Id. The court held "that the defendant in the first action was in fact the [estate's]

9

personal representative" and that the savings statute applied to the plaintiff's second complaint. Id.

In Foster, a decedent's grand-nephew filed a wrongful death suit, alleging medical malpractice by the defendant doctors. 158 S.W.3d at 419. The grand-nephew was the wrong party to bring the claim. Id. at 424. He voluntarily dismissed the claim. Id. at 419. He refiled the action within one year of the nonsuit, but beyond the expiration of the statute of limitations. Id. The decedent's husband, the proper party plaintiff, was added in the second action. Id. The trial court found that the statute of limitations barred the second action. Id. at 421. The addition of the decedent's husband to the second case precluded application of the savings statute. Id.

The Tennessee Court of Appeals reversed. It gave five reasons the savings statute applied although the husband was not named in the initial action. First, "[s]ince both [the grand-nephew] and [the husband] were filing in their representative capacities on behalf of [the decedent], the addition of [the husband] [did] not destroy the identity of the parties." Id. at 425. Second, in the analogous situation of relation back under the Tennessee rules of civil procedure, the Tennessee Supreme Court had expressed a "liberality in permitting a proper party plaintiff to be added or substituted for an improper party plaintiff, . . . even when the

10

expiration of the statute of limitations would prevent a new lawsuit from being filed." Id. at 423-24. This leniency was "especially evident" in wrongful death actions, where "plaintiffs sometimes struggl[e] to name the proper party plaintiff." Id. at 424-25. Third, "Tennessee law favors the resolution of disputes on their merits" and "the savings statute must be given a broad and liberal construction" to achieve its purpose: "administering the law fairly between litigants without binding them to minor and technical mistakes. . . ." Id. at 422, 425. Fourth, the defendants had been on notice since the first action that "they would have to defend themselves against allegations of medical malpractice arising out of [the decedent's] death." Id. at 425. Fifth, the change in parties caused the defendants "no prejudice." Id.

In Sowell, the plaintiff filed a tort lawsuit against a defendant who died during the pendency of the action. 2009 WL 4929402, at *1. The plaintiff did not file a motion to substitute the proper party for the deceased defendant as Tennessee law required. Id. Instead, the plaintiff took a voluntary nonsuit. Id. Within a year of the nonsuit, the plaintiff filed another lawsuit. Id. The second lawsuit made the same allegations as the first but named the decedent's estate as the defendant. Id. The estate moved to dismiss, arguing that the savings statute did not

apply because the defendants in the first and second lawsuits were not identical. Id. The trial court agreed and dismissed the second case. Id.

The Tennessee Court of Appeals reversed. The court, in a spare analysis, stated one reason: had the defendant's death occurred after the plaintiff's nonsuit, the plaintiff would have had no choice but to refile against the estate. Id. at *4. A strict application of the party identity requirement in that situation would preclude the plaintiff from availing himself of the savings statute. Id. The court could not "agree with [that] interpretation." It found that, for purposes of resolving the party identity issue, the situation before it was "the same" as if the defendant's death postdated the nonsuit. Id. The court held that, "[u]nder the circumstances presented in this case," the decedent and the estate were "substantially identical." Id.

These cases are not precisely on point. They do not decide the applicability of the savings statute to an amended complaint that names a defendant the original complaint did not. Goss, Foster, and Sowell do, however, give relevant examples of circumstances in which the savings statute applies. They also state principles governing the applicability of the statute. Whether the affected defendant had notice and would not be prejudiced by applying the statute are significant factors in Goss

12

and Foster.  Other factors include the finding in Goss that the defendant in the first action was "in fact" the same as the defendant in the second, suit by both Foster plaintiffs in their representative capacities, and the particular liberality afforded wrongful death plaintiffs when they seek to substitute a proper party plaintiff.

There are differences between the circumstances in the state cases and the circumstances in this case. In Goss and Foster, the proper defendant had notice of the action before the relevant limitations period had run.  See Goss, 751 S.W.2d at 825; Foster, 158 S.W.3d at 425.  Here, the Government did not have notice until a few weeks after the repose deadline had passed.[2]  The changed party in Foster was a plaintiff, not a defendant.  Unlike the

---

[2] The Government does not appear to have had notice of Lundy's claim until September 20, 2017, when CCHS made the Government aware of Lundy's lawsuit. That is about three weeks after the statute of repose had run.  Lundy contends that the Government had notice of her claim by at least May 19, 2017.  That is the date HHS sent a letter to Lundy after learning of Lundy's intent to sue CCHS and the doctors.  Lundy does not cite, and the Court has not found, any authority for the proposition that, for purposes of the savings statute, a non-party federal agency's notice is imputed to the Government.  The opposite is true in the analogous context of relation back under the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 15(c)(2) (requiring that notice to the United States be made through notice to the appropriate U.S. Attorney, the U.S. Attorney's designee, or the U.S. Attorney General); Allgeier v. United States, 909 F.2d 869, 874 (6th Cir. 1990) (declining "to impute the actual knowledge of an agency to the United States").  It appears that it would be a novel expansion of Tennessee law to find that the Government was on notice because HHS knew about Lundy's intent to sue and sent Lundy a letter.  Federal courts "should be extremely cautious about adopting 'substantive innovation' in state law." Lindenberg v. Jackson Nat'l Life Ins. Co., 912 F.3d 348, 364 (6th Cir. 2018) (quoting Combs v. Int'l Ins. Co., 354 F.3d 568, 578 (6th Cir. 2004)).  For purposes of the savings statute, HHS's notice is not imputed to the Government.

defendant in Goss, the Government here substituted itself in place of the improper defendant and was, for a time, a named defendant.

The Court is aware of no Tennessee authority that squarely addresses whether the savings statute applies in circumstances like those here: plaintiff sues the wrong defendant before the limitations deadline; the right defendant gets notice shortly after the limitations deadline, participates in the case, and then substitutes itself for the wrong defendant; the court dismisses the substituted defendant for non-merits reasons; plaintiff then brings the substituted defendant back into the case through an amended complaint.

Applying the principles established by the relevant Tennessee authorities, however, it is clear that the savings statute applies in this case. Tennessee has a policy that the savings statute be given a broad and liberal construction; the Government has been a party in this case; and the Government has had notice of the action such that it will not be prejudiced by application of the savings statute.

"It is well settled that Tennessee law strongly favors the resolution of all disputes on their merits, and that the savings statute is to be given a broad and liberal construction in order to achieve this goal." Henley v. Cobb, 916 S.W.2d 915, 916 (Tenn. 1996). In particular, "Tennessee courts have long recognized that

14

the interests of justice are promoted by providing injured persons an opportunity to have their lawsuits heard and evaluated on the merits." Brown v. Samples, No. E2013-00799-COA-R9-CV, 2014 WL 1713773, at *8 (Tenn. Ct. App. Apr. 29, 2014) (collecting cases). When the law does not otherwise require, ambiguous procedural rules should be construed in favor of the injured party. See Childress v. Bennett, 816 S.W.2d 314, 316 (Tenn. 1991) ("[I]t is the general rule that courts are reluctant to give effect to rules of procedure which seem harsh and unfair, and which prevent a litigant from having a claim adjudicated upon its merits."). This is especially true of judge-made, not statutorily-specified, rules like the party identity requirement. The Sowell decision suggests as much, where the court construed the party identity requirement to achieve what it thought was an equitable result. Granting the Government's Motion would contravene Tennessee policy. It should be done only if the law unambiguously requires it.

Although the Government was not named in the initial Complaint, it has been a defendant in this case. In Goss, what was relevant was whether the defendant had been a party to the first action, not whether the defendant had been named in the first complaint. See Goss, 751 S.W.2d at 825 (finding that the savings statute applied because "the defendant in the first action was in fact the decedent's personal representative"). Although the

Government had been dismissed a few months before the Amended Complaint brought it back in, the Government was, for a time, a defendant in the action that the initial Complaint commenced. As in Goss, the Government was a party to the first action.

The Government has had notice of this action and will not be prejudiced by the application of the savings statute. The Tennessee Supreme Court has held that "notice to the party affected is the true test of the [savings] statute's applicability." Henley, 916 S.W.2d at 917. The Government learned of the case shortly after the repose deadline, filed a responsive pleading in state court, and, after the case was removed, substituted itself as a defendant and filed a motion to dismiss. The Government has been well-aware that it might have to defend itself against a medical malpractice claim brought by Lundy. Although the defendants in Goss and Foster had notice before the relevant limitations deadline, the Court has found no authority for the proposition that, for purposes of the savings statute, pre-deadline notice is required.

In the analogous context of relation back, a new defendant can be added to a case by an amended complaint if it had sufficient notice of the action within one-hundred-and-twenty days after the commencement of the action. See Tenn. R. Civ. P. 15.03. The savings statute is not stricter. See Frye v. Blue Ridge

16

Neuroscience Ctr., P.C., 70 S.W.3d 710, 716 (Tenn. 2002) ("Statutes . . . sharing a common purpose must be construed together ('in pari materia') 'in order to advance their common purpose or intent.'") (quoting Carver v. Citizen Utils. Co., 954 S.W.2d 34, 35 (Tenn.1997)). A stricter interpretation of the savings statute here would elevate form over function.

For the foregoing reasons, the savings statute applies to Lundy's claim against the Government.

The Government makes a single argument that the savings statute does not apply. Noting that the statute allows a plaintiff to "exercise all of 'the same procedural and substantive benefits which were available at the time of the first action,'" Pike v. United States, 868 F. Supp. 2d 667, 685 (M.D. Tenn. 2012) (quoting Energy Sav. Prods., Inc. v. Carney, 737 S.W.2d 783, 785 (Tenn. Ct. App. 1987)), the Government contends that Lundy cannot avail herself of the statute because she did not exhaust her administrative remedies before the statute of repose deadline. (ECF No. 60 at 729.) Therefore, "the ability to sue the United States was not among the procedural and substantive benefits available to [her] at the time of [her] first action." (Id.). The Government contends that the savings statute, "cannot confer rights that never existed -- it simply preserves rights previously asserted." (Id. at 730.)

17

The Government treats the language from Pike as a limitation on how a plaintiff invoking the savings statute may proceed. The Government cites no authority for this restrictive interpretation. There is no reason to interpret the language from Pike as a limiting principle, rather than a statement of some of the benefits the savings statute affords. The Court in Pike said that a plaintiff "*may* exercise all of the same procedural and substantive benefits which were available at the time of the first action," not that the plaintiff is restricted to those benefits. 868 F. Supp. 2d at 685 (emphasis added) (quoting Energy Sav. Prods., 737 S.W.2d at 785). The language is permissive, not limiting.

If changed circumstances permit the maintenance of an action, even if that was not the case before, Tennessee policy would prefer that the action survive. The Government's interpretation runs counter to Tennessee's policy that the savings statute be given a broad and liberal construction.

## IV. Conclusion

For the foregoing reasons, the Government's Motion to Dismiss is DENIED.

So ordered this 26th day of February, 2019.

/s/ Samuel H. Mays, Jr.<br>
SAMUEL H. MAYS, JR.<br>
UNITED STATES DISTRICT JUDGE