IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| D.B., A MINOR, BY AND THROUGH HIS NEXT FRIEND AND MOTHER ANTOINETTE LUNDY, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 17-cv-02806-SHM-cgc |
| SHELBY COUNTY HEALTH CARE CORPORATION AND UNITED STATES OF AMERICA, | ) ) ) ) ) | |
| Defendants. | | |

**ORDER GRANTING UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff brings this medical malpractice action against the United States of America as substitute party (the "Government") and Shelby County Health Care Corporation ("SCHCC"). (D.E. No. 38.) Plaintiff sues the Government under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671, et seq., (the "FTCA"). Plaintiff sues SCHCC for medical malpractice under Tennessee law. Before the Court is the Government's Motion for Summary Judgment (the "Motion"), filed on May 28, 2020. (D.E. No. 76.) Plaintiff has responded, the Government has replied, Plaintiff has filed a sur-reply, the Government has filed a sur-sur-reply, and the Motion is ripe

for consideration. (D.E. Nos. 80, 87, 93, 97.) For the following reasons, the Motion is GRANTED.

**I.   Background**

D.B., Plaintiff Antoinette Lundy's minor child, on whose behalf she brings this action, sustained injuries because of allegedly negligent conduct during his delivery on May 2, 2014. (Amended Complaint, D.E. No. 38 at 447-48.)[1]

On April 28, 2017, pursuant to Tennessee law, Lundy notified the health care providers responsible for her and D.B.'s care that she intended to sue them. (D.E. No. 4-1 at 183-84.) Christ Community Health Services, Inc. ("CCHS") and its employees Dr. William G. Mullinax, Dr. Ellisa Rausch Krumm, and Dr. David Jordan Paslay (the "doctors") were among the parties notified. (Id.) On or before May 19, 2017, the United States Department of Health and Human Services ("HHS") sent a letter to Lundy. (D.E. No. 16-2 at 381.) HHS informed Lundy that it had learned of her intent to sue CCHS employees, that those employees might have been federal employees at the time they provided care, and that, if so, the FTCA would be her exclusive remedy against them. (Id.)

On August 22, 2017, Lundy sued CCHS, the doctors, and SCHCC for medical malpractice in Tennessee state court. (D.E.

---

[1] Unless otherwise noted, all pin cites for record citations are to the "PageID" page number.

2

No. 4-1 at 176.) Lundy served CCHS through its registered agent on September 1, 2017. (D.E. No. 4 at 173.) CCHS notified the Government of Lundy's suit on September 20, 2017. (Id. at 172.) The Government filed a response on September 27, 2017. (D.E. No. 4-1 at 327-28.) In its response, the Government said it had not yet determined whether CCHS and the doctors were federal employees when they cared for Lundy and D.B. and, as a result, did not yet know whether federal law would require the Government to enter a substitution of party. (Id.) On October 13, 2017, while her case was pending in state court, Lundy filed an FTCA administrative claim against the Government. (D.E. No. 20 at 393.)

CCHS removed to this Court on November 3, 2017, under 42 U.S.C. § 233(l)(2). (D.E. No. 4.) On December 6, 2017, after determining that CCHS and the doctors were federal employees at all relevant times, the Government moved to substitute itself as defendant in place of CCHS and the doctors. (D.E. No. 12 at 361-62.) The Court granted the Government's motion on December 11, 2017. (D.E. No. 15.) The next day the Government filed a motion to dismiss for lack of jurisdiction, noting that Lundy had failed to exhaust her administrative remedies as required by the FTCA. (D.E. No. 16 at 370.) The Court granted the Government's motion on February 16, 2018, dismissing the case against the Government without prejudice. (D.E. No. 29.)

On June 28, 2018, Lundy filed a motion for leave to amend her Complaint to add the Government as a defendant. (D.E. No. 35.) She represented that she had completed the FTCA administrative claims process and received a final determination denying her claim. (Id. at 427.) The Court granted Lundy's motion. (D.E. No. 36.) Lundy filed her Amended Complaint on July 19, 2018, naming the Government and SCHCC as defendants. (D.E. No. 38.)

On October 30, 2018, the Government filed a Motion to Dismiss. (D.E. No. 58.) The Government contended that Tennessee's health care liability statute of repose deprived the Court of jurisdiction over the Government. (Id. at 696); Tenn. Code Ann. §§ 29-26-116(a)(3) and 29-26-121(c).

The Court denied the Government's motion because Lundy's initial complaint had been filed before the deadline imposed by the statute of repose, the initial complaint had been dismissed for reasons not extinguishing her right of action, and the amended complaint had been filed within one year of the order of dismissal, which satisfied Tennessee's savings statute. (D.E. No. 61 at 740-41.)

On May 28, 2020, the Government filed the instant Motion. (D.E. No. 76.) The Government argues that Lundy failed to satisfy the FTCA's two-year statute of limitations for filing an administrative claim with the federal agency, (Id. at 783),

4

which would "forever bar[]" her claim against the Government, 28 U.S.C. § 2401(b). D.B. was injured on May 2, 2014, and the Government contends that the latest date the statute of limitations could have begun to run was May 19, 2014, the date D.B. was released from the hospital. (D.E. No. 76 at 793.) The Government contends that the two-year statute of limitations for filing an administrative claim had run by May 19, 2016, and that Plaintiff did not file an administrative claim until October 13, 2017. (Id. at 793-94.) Plaintiff agrees that the statute of limitations had run before she filed her administrative claim, but argues that the statute should be equitably tolled. (See Pl.'s Resp., D.E. No. 80 at 858.)

## II. Jurisdiction

The Court has federal-question jurisdiction over Lundy's claim against the Government. Under 28 U.S.C. § 1331, United States district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." This action was removed under 42 U.S.C. § 233(l)(2), and the Court has original and exclusive jurisdiction under 42 U.S.C. § 233(g)(1)(A).

The Court has supplemental jurisdiction over Lundy's claim against SCHCC under 28 U.S.C. § 1367(a). That claim derives from a "common nucleus of operative fact" with Lundy's claim against the Government. United Mine Workers of Am. v. Gibbs,

5

383 U.S. 715, 725 (1966); Soehnlen v. Fleet Owners Ins. Fund, 844 F.3d 576, 588-89 (6th Cir. 2016).

**III. Standard of Review**

Under Federal Rule of Civil Procedure 56, on motion of a party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he moving party is entitled to summary judgment when the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" George v. Youngstown State University, 966 F.3d 446, 458 (6th Cir. 2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).

The non-moving party has the duty to point out specific evidence in the record sufficient to justify a jury decision in her favor. See Fed. R. Civ. P. 56(c)(1); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). When confronted with a properly supported motion for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). A genuine dispute for trial exists if the evidence is "'such that a reasonable jury could return a verdict for the nonmoving party.'" See Wasek v. Arrow Energy Servs., 682 F.3d 463, 467

6

(6th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "[I]n order to survive a summary judgment motion, the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Lossia v. Flagstar Bancorp, Inc., 895 F.3d 423, 428 (6th Cir. 2018) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

**IV. Analysis**

The FTCA is the exclusive remedy for victims of the torts of United States employees. 28 U.S.C. § 2679(a); Himes v. United States, 645 F.3d 771, 776 (6th Cir. 2011). As a condition of this waiver of sovereign immunity, Congress has imposed a statute of limitations for FTCA claims. United States v. Kubrick, 444 U.S. 111, 117-18 (1979); see 28 U.S.C. § 2401(b). That statute must be strictly enforced. Kubrick, 444 U.S. at 117-18; Chomic v. United States, 377 F.3d 607, 615 (6th Cir. 2004) ("[T]he statute of limitations in § 2401(b) must be

7

strictly construed"); see Lehman v. Nakshian, 453 U.S. 156, 160-61 (1981) ("[T]his Court has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied.") (internal quotations omitted).

The Supreme Court, in United States v. Kwai Fun Wong, 575 U.S. 402 (2015), made clear that equitable tolling is available as an exception to the statute of limitations for FTCA claims. Id. at 420 ("[W]e hold that the FTCA's time bars are nonjurisdictional and subject to equitable tolling."). The Sixth Circuit has cautioned that courts should apply equitable tolling to FTCA claims "sparingly." Ayers v. United States, 277 F.3d 821, 828 (6th Cir. 2002). There is a presumption against equitable tolling for claims against the United States. See Irwin v. Dep't of Veterans' Affairs, 498 U.S. 89, 96 (1990) ("Because the time limits imposed by Congress in a suit against the Government involve a waiver of sovereign immunity, it is evident that no more favorable tolling doctrine may be employed against the Government than is employed in suits between private litigants."); see also Schappacher v. United States, 475 F. Supp. 2d 749, 755 (S.D. Ohio 2007) ("[T]here is a rebuttable presumption that equitable tolling does not apply to suits against the United States"). The burden to establish

equitable tolling is on the party seeking it. Robertson v. Simpson, 624 F.3d 781, 784 (6th Cir. 2010).

When determining whether the statute of limitations for an FTCA claim has been equitably tolled, the Sixth Circuit applies a case-by-case analysis that focuses on five factors. See Truitt v. County of Wayne, 148 F.3d 644, 648 (6th Cir. 1998). They are: "(1) the plaintiff's lack of notice of the filing requirement; (2) the plaintiff's lack of constructive knowledge of the filing requirement; (3) the plaintiff's diligence in pursuing her rights; (4) an absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." Jackson v. United States, 751 F.3d 712, 719 (6th Cir. 2014). Those factors are neither comprehensive nor material in all cases, and "a litigant's failure to meet a legally-mandated deadline due to unavoidab[le] ... circumstances beyond that litigant's control is often the most significant consideration in courts' analyses, rather than any particular factor of the five-part standard." Zappone v. United States, 870 F.3d 551, 556 (6th Cir. 2017) (internal quotations omitted).

    **A.   Plaintiff was not reasonable in remaining ignorant of the requirement to file a timely administrative claim.**

The reasonableness of a plaintiff's ignorance of the legal requirement to file a timely claim depends on whether plaintiff

9

had the opportunity to know about the requirement, meaning actual notice or constructive knowledge, and plaintiff's diligence in pursuing the claim. See Warren v. Highlands Reg'l Med. Ctr., No. 7:18-cv-00101-GFVT, 2019 WL 2250632, at *3 (E.D. Ky. May 24, 2019) (reasoning that constructive knowledge and lack of diligence cut against reasonableness of remaining ignorant of statute of limitations); see also Kellom v. United States, No. 19-11622, 2020 WL 95805, at *6 (E.D. Mich. Jan. 8, 2020) (considering the actual notice, constructive knowledge, and reasonableness factors together); Dann v. United States, No. 6:17-32-DCR, 2017 WL 3873702, at *3 (E.D. Ky. Sept. 5, 2017) (considering the diligence and reasonableness factors together).

Before May 19, 2016, the last date for her to file an administrative claim, Plaintiff had constructive knowledge that the healthcare providers were deemed federal employees. Plaintiff could have discovered their status with a reasonably diligent investigation into the possible defendants, making it unreasonable that Plaintiff remained ignorant of the requirement to file a timely claim.

### 1. Plaintiff had constructive knowledge that CCHS and Dr. Mullinax were deemed federal employees.

Plaintiff argues that she had no constructive knowledge that CCHS and Dr. Mullinax were deemed federal employees

10

because CCHS is and appears to be a religious facility. (Pl.'s Sur-Reply, D.E. No. 93 at 1445.) Plaintiff argues that she could have reasonably concluded that CCHS would not receive federal support because of the separation of church and state. (Id.) Noting the lack of cases dealing specifically with religious facilities, Plaintiff relies on Santos ex rel Beato v. United States, 559 F.3d 189 (3d Cir. 2009), for the proposition that the private appearance of the facility affects whether there is constructive knowledge. (Pl.'s Sur-Reply, D.E. No. 93 at 1449-50.)

The court in Santos applied equitable tolling to the plaintiff's claims. Santos, 559 F.3d at 203. The healthcare provider appeared to be a "private clinic" staffed with "private actors," which did not "alert[]" the plaintiff "to the need to explore their federal employment status." Id. at 200-01. Critical to the court's holding, however, was the lack of notice on the healthcare provider's website. Id. at 201. The website alerted the public only that the provider received federal funding and not that the provider was deemed a federal facility. Id.

The notice on CCHS's website was different. It alerted the public that CCHS was deemed a federal facility. (See Pl.'s Sur-Reply, D.E. No. 93 at 1452.) The notice was clear that CCHS "has federal Public Health Service deemed status with respect

11

to certain health or health-related claims, including medical malpractice claims, for itself and its covered individuals." (Def.'s Reply, D.E. 87 at 1233.) More opaque notices on healthcare provider websites have alerted plaintiffs that the provider was deemed. See A.Q.C. ex rel. Castillo v. United States, 656 F.3d 135, 145 (2d Cir. 2011) ("[C]ommon sense—let alone years of experience in medical malpractice litigation—would alert a reasonable advocate to the possibility that a community health clinic with the professed mission of 'improv[ing] the health status of underserved communities'" would be covered by the FTCA).

Although Lundy notes that the notice was not on the website's homepage and was not prominently displayed on other pages, (Pl.'s Sur-Reply, D.E. No. 93 at 1452), the notice was accessible to the public continuously prior to, during, and after the period available for Lundy to file her administrative claim, (Def.'s Reply, D.E. 87 at 1233); see Santos, 559 F.3d at 203 (relying on the lack of "publicly available sources of information" to equitably toll the statute of limitations); cf. Warren, 2019 WL 2250632, at *3 (holding that, where notice was on the healthcare provider's homepage, "the fact that such information is easily obtainable online suggests that [plaintiff's] lack of knowledge results from a lack of

diligence, and cuts against her 'reasonableness in remaining ignorant of [that] particular legal requirement.'").

Plaintiff argues that she had no constructive knowledge that Dr. Mullinax was deemed a federal employee. (Pl.'s Sur-Reply, D.E. No. 93 at 1453.) Plaintiff points out that she had never met Dr. Mullinax before he delivered D.B. and that, because Dr. Mullinax used a swear word during the delivery, it appeared he was not related to the religious provider CCHS. (Id.)

Lundy had constructive knowledge of Dr. Mullinax's relationship with CCHS. Lundy had seen another doctor from CCHS for her prenatal care. It would be reasonable to conclude that the doctor who delivered D.B., Dr. Mullinax, would be from the same organization as the doctor who provided Lundy's prenatal care. (Def.'s Sur-Sur-Reply, D.E. No. 97 at 3);[2] see D.J.S.-W. by Stewart v. United States, 962 F.3d 745, 753 (3d Cir. 2020) (finding plaintiff's counsel responsible for understanding common arrangements between doctors and healthcare provider facilities).

### 2. **Plaintiff was not reasonably diligent.**

Due diligence is critical to preserve an FTCA case through equitable tolling. See Irwin, 498 U.S. at 96 ("We have generally been much less forgiving in receiving late filings

---

[2] PageID not available for this docket entry.

where the claimant failed to exercise due diligence in preserving his legal rights."); see also Donahue v. United States, 634 F.3d 615, 629 (1st Cir. 2011) ("Due diligence is a prerequisite for equitable tolling."). Any lack of diligence by her attorneys is imputed to Lundy. See Mason v. Dep't of Justice, 39 F. App'x 205, 207 (6th Cir. 2002) ("[F]or purposes of determining whether equitable tolling applies, the actions of plaintiffs' attorneys are attributable to their clients"); see also Arteaga v. United States, 711 F.3d 828, 835 (7th Cir. 2013).

Plaintiff argues that, because she sought and obtained counsel before the two-year statute of limitations had run, she was diligent. (Pl.'s Sur-Reply, D.E. No. 93 at 1458.) Plaintiff's then counsel closed her file, advising that it was too early to determine what damages D.B. had suffered. (Id. at 1459.) Although it may have been too early to determine damages, former counsel also had an obligation to research the possible defendants in the case. Hawver v. Nestorak, No. 13-11068, 2017 WL 2213571, at *6 (E.D. Mich. May 19, 2017) ("[D]iligence requires reasonable efforts on the part of a plaintiff to learn the legal identity and employment status of potential defendants"); see also Bazzo v. United States, 494 F. App'x 545, 548 (6th Cir. 2012) ("[Plaintiff] does not detail what steps counsel took to determine [the doctor]'s employment

14

status and, thus, does not explain how her affiliation with [the] federally funded [healthcare provider] would have eluded a reasonably diligent party.").

When Plaintiff's attorneys did begin to research defendants in the case, they located an address for Dr. Mullinax, which was available on the Tennessee Department of Health website. (Def.'s Reply, D.E. No. 87 at 1239.) Plaintiff's counsel used that address to send Dr. Mullinax notice of the suit on April 28, 2017. (Id.) That address was a CCHS address. (Id.) Had counsel exercised reasonable diligence earlier, the address would have alerted them that Dr. Mullinax was a CCHS employee. See D.J.S.-W. by Stewart, 962 F.3d at 753-54 ("[H]ad [plaintiff's] counsel visited or searched the address to which his office sent the request to [the doctor], he would have discovered that it was a street address for [the deemed healthcare provider]."). Even after locating Dr. Mullinax's CCHS address and using that address to notify him, Plaintiff waited six months before filing her administrative claim. (See D.E. No. 20 at 393.)

Plaintiff also argues that, because counsel worked to obtain complete copies of medical records, Plaintiff was diligent. (Pl.'s Response, D.E. No. 80 at 867-68.) Although seeking medical records was one aspect of the diligence that supported equitable tolling in Santos, seeking medical records

15

alone is insufficient where counsel did not also correspond with CCHS or visit CCHS's facility. See Santos, 559 F.3d at 200 ("[Plaintiff]'s counsel corresponded with [the healthcare provider], obtained [plaintiff]'s medical records, visited [the healthcare provider's] facility, and retained several expert witnesses."); see also White by White v. United States, No. 1:17-cv-882, 2018 WL 9944972, at *2 (W.D. Mich. Jan. 26, 2018) ("Taking all measures necessary to bring a state malpractice claim is insufficient to show diligence in FTCA cases.").

Plaintiff waited more than a year and a half after the statute had run before filing her administrative claim. She was not reasonably diligent.

**B.  Defendant would be prejudiced by equitably tolling the statute of limitations.**

Defendant argues that it has been prejudiced by the late filing because Lundy said that she had memory issues, which were likely exacerbated by the delay in filing. (Def.'s Reply, D.E. No. 87 at 1242.) Plaintiff argues that Defendant was not prejudiced by the delayed filing because there are no material issues Lundy failed to recall. (Pl.'s Sur-Reply, D.E. 93 at 1459-60.)

The possibility of litigating at all can be sufficient prejudice to preclude equitable tolling. Warren, 2019 WL 2250632, at *3 ("[I]t is apparent that should the Court toll

the limitations period, the United States would be subject to all the expenses associated with discovery and trial preparation"); Jackson v. United States, No. 12-10124, 2013 WL 361010, at *6 (E.D. Mich. Jan. 30, 2013) ("Defendant would be prejudiced were the Court to apply equitable tolling. Defendant would be required to litigate a matter that unquestionably was filed beyond the limitations period and over which Congress did not intend to waive sovereign immunity."), aff'd, 751 F.3d 712 (6th Cir. 2014).

Whether Defendant would be prejudiced is not determinative because no other factors support equitable tolling. See Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984) ("Although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified, it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures.").

**C.   The action against the remaining defendant is remanded to state court.**

The Court has discretion in deciding whether to exercise supplemental jurisdiction over Plaintiff's claim against SCHCC. Plaintiff's action is properly before this Court because the Government is a defendant. SCHCC is not deemed a federal

17

healthcare provider and did not remove based on diversity. See J.S.R. ex rel. Rojas Polanco v. Washington Hosp. Ctr. Corp., 667 F. Supp. 2d 83, 85 (D.D.C. 2009) ("The fact that Non-federal Defendants might have removed the case on the basis of diversity is irrelevant—that factual scenario simply never existed.") (emphasis in original). Because the Court grants the Government's Motion, no claim remains over which the Court had original jurisdiction. "[I]t is apparent that trial courts do possess some discretion to decide a pendent state law claim once the federal basis for jurisdiction is dismissed." Province v. Cleveland Press Pub. Co., 787 F.2d 1047, 1055 (6th Cir. 1986). That discretion is "minimal," id., and "[t]his circuit has moved away from the position that the court has discretion to retain jurisdiction over a pendent state claim where the federal claim has been dismissed before trial." Serv., Hosp., Nursing Home and Pub. Emps. Union v Commercial Prop. Servs., 755 F.2d 499, 506 n.9 (6th Cir. 1985).

The Court declines to exercise supplemental jurisdiction over Plaintiff's claim against SCHCC. That claim is governed by Tennessee law, and Tennessee courts are better able to address it. See 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction"); United Mine Workers, 383 U.S. at 726

("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties. . . . Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

Plaintiff's claim against SCHCC is REMANDED to the Circuit Court of Shelby County, Tennessee. See Desir v. Steward Health Care Sys., LLC, 109 F. Supp. 3d 401, 408 (D. Mass. 2015) ("The remaining claims all arise under state law and are appropriately litigated in state court. . . . Therefore, the remaining [claims] are remanded to the state court.").

**V.  Conclusion**

For the foregoing reasons, the Government's Motion for Summary Judgment is GRANTED. Lundy's claim against SCHCC is REMANDED to the Circuit Court of Shelby County, Tennessee.

SO ORDERED this  17th  day of November, 2020.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE